IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RANDY EDWARDS,                    )
                                  )
                Plaintiff,        )
                                  )
    v.                            )      1:10CV782
                                  )
CITY OF CONCORD,                  )
and DECKSTER BARLOWE,             )
Individually and Officially,      )
                                  )
                Defendants.       )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case arises out of injury Plaintiff Randy Edwards ("Edwards") allegedly suffered in connection with his arrest by Defendant Deckster Barlowe ("Barlowe"), a Sergeant with the Concord (North Carolina) Police Department. Edwards' amended complaint asserts causes of action for false arrest against Barlowe in his individual capacity (first cause of action), assault and battery against Barlowe in his individual capacity (second cause of action), violation of the North Carolina Constitution against Barlowe in his official capacity (third cause of action), and violation of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 against Barlowe in his individual capacity (fourth

cause of action).[1]  (Doc. 13-1 at 7-11.)  Before the court is the motion of Defendants Barlowe and the City to dismiss Edwards' third cause of action under the North Carolina Constitution, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that it is not cognizable because Edwards has an adequate remedy at law.  (Doc. 6.)  The motion has been fully briefed and is ready for resolution.  For the reasons set forth below, the motion will be granted.

I.   **BACKGROUND**

In considering a Rule 12(b)(6) motion, the court "accept[s] as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted), which provides as follows:

Edwards operated Bubba's Towing service in the Concord area and had contracts with several businesses that authorized him to tow vehicles parked in a manner prohibited by the business or property owner.  (Doc. 13-1 ¶¶ 4, 5.)  On August 4, 2008, after 9:00 p.m., Edwards drove his tow truck to Lock Mill Plaza, a parking area covered by one of his contracts, and found several vehicles without a green windshield sticker provided by the property owner to indicate permission to park.  (Id. ¶¶ 7-11.)

---

[1]  The amended complaint contains inconsistent and duplicate paragraph numbers.  Unless otherwise indicated, the court's citations hereafter will be to the numbering beginning on page 3 of the amended complaint under "Facts," i.e., paragraph number 4.

Signs posted at the parking lot provided notice to contact Bubba's Towing if a vehicle were towed. (Id. ¶ 9.) Edwards towed all the offending vehicles and, consistent with prior practice, contacted the City police dispatcher to report a description of each towed vehicle, including the license tag number. (Id. ¶ 12.)

Jeffrey Busey ("Busey"), a tenant of Lock Mill Plaza, realizing that his wife's vehicle he had driven (which did not have the required window sticker) was missing from the Lock Mill Plaza lot, called the City police to report the vehicle as stolen.[2] (Id. ¶¶ 13-14.) Barlowe responded to the call with other officers. The officers and Busey proceeded to Edwards' home. (Id. ¶¶ 15-16.) Edwards met Barlowe at his front door, where Barlowe accused Edwards of vehicle theft and Edwards tried to explain that he had a contract to tow the vehicle and informed the Concord police dispatcher about each car towed. Busey, standing in the street, began shouting at Edwards, accusing him of taking the vehicle illegally. (Id. ¶¶ 18-20.)

Barlowe ordered Edwards to disclose the location of the towed vehicle, threatening to arrest him if he did not. (Id. ¶ 21.) Edwards stated that he would not release the vehicle unless the owner paid the towing charges. Understanding that

---

[2] Busey was identified and named a defendant in the first cause of action (false arrest) in the amended complaint (Doc. 13-1) but was dismissed thereafter.

Barlowe was about to arrest him, Edwards placed his keys and wallet inside the front door. (Id. ¶¶ 21-22.) At that point, Barlowe seized Edwards, forcibly twisting his arms and tearing tendons in his shoulder, causing immediate and severe pain. (Id. ¶¶ 23-24.) Barlowe placed Edwards in another officer's car with the direction that he be transported to the jail. (Id. ¶ 25.) Edwards was photographed and fingerprinted, held at the jail for an unstated period, and released without being charged. Busey was allowed to retrieve the automobile without paying the towing fee. (Id. ¶ 38.) Edwards subsequently underwent surgery and two years after the incident had not fully recovered. (Id. ¶¶ 39-40.)

This action was initially filed in the Superior Court of Cabarrus County, North Carolina, and was removed to this court on the grounds of federal question jurisdiction based on Edwards' § 1983 claim.[3] (Doc. 1.)

**II. ANALYSIS**

The purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party

---

[3] Edwards claims that Concord removed this action to evade a North Carolina state court which had denied a motion to dismiss by the City and another officer on the same grounds in a similar lawsuit. (Doc. 9 at 4.) The court only concerns itself with whether federal question jurisdiction exists, which it does pursuant to Edwards' claim under 42 U.S.C. § 1983.

4

of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson, 551 U.S. at 94, and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Whether the facts alleged present a cognizable claim is a question of law for the court. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 179-80 (4th Cir. 2009) (district court's dismissal of complaint under Rule 12(b)(6) reviewed de novo).

The subject of Defendants' motion -- Edwards' third cause of action in which Barlowe is sued in his official capacity only -- alleges excessive and unreasonable force in violation of the Declaration of Rights contained in Article I, § 19 of the North Carolina Constitution:

> In the alternative, should it be determined that Defendant Barlowe had probable cause to arrest Plaintiff or that he did not intentionally or maliciously injure Plaintiff, but was merely negligent, the level of force used was still excessive and unreasonable. Given the City of Concord's preservation of governmental immunity against a negligence claim against Barlowe in his official capacity, Plaintiff would not have an adequate remedy at law should it be determined that Barlowe negligently injured Plaintiff. Therefore, he alleges this alternative claim for relief under the state constitution, which is brought against Defendant Barlowe in his official capacity only.

5

(Doc. 13-1 ¶ 52.) The parties acknowledge that the North Carolina Supreme Court has held that "in the absence of an adequate state remedy," Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 342, 678 S.E.2d 351, 356-57 (2009), one whose state constitutional rights have been abridged has a direct claim under the North Carolina Constitution; otherwise, no direct constitutional claim is recognized. They disagree, however, on how to apply this principle to this case.

Defendants argue that the third cause of action must be dismissed because Edwards' claims against Barlowe for false arrest (first cause of action) and assault and battery (second cause of action) constitute adequate remedies under state law. (Doc. 7 at 5-6.) Either claim, they assert, "could provide Plaintiff with the same type of relief as his claim under the North Carolina Constitution, that is, monetary damages for his alleged injuries caused by the alleged arrest without probable cause and alleged use of excessive force pursuant to the arrest." (Id. at 6.) According to Defendants, an "adequate remedy" need only provide Edwards "an opportunity to 'enter the Courthouse doors'" to present his intentional tort claims for damages, and these two claims provide him a "possibility of relief under the circumstances." (Id. at 6-8.)

Edwards argues that his North Carolina constitutional claim should be permitted at this stage because if he fails to recover

6

on his two intentional tort claims, he will have no adequate state law remedy for any negligence claim against Barlowe under North Carolina law. This is so, he contends, because a potential negligence claim against Barlowe in his official capacity would be barred by the Defendants' assertion of governmental immunity (Doc. 9 at 7-11), and a potential negligence claim against Barlowe in his individual capacity would be barred by public official immunity (which Barlowe has not waived) (Id. at 11-12). Because an adequate remedy at law must provide "the possibility of relief under the circumstances," Edwards contends, this may be frustrated should both tort claims be denied because a jury finds that Barlowe acted with probable cause and caused Edwards' injury without intent or malice. (Id. at 17.)

Article I, § 19 of the North Carolina Constitution provides:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

A claim under this section "is self-executing, and neither requires any law for its enforcement, nor is susceptible of impairment by legislation." Amward Homes, Inc. v. Town of Cary,

7

\_\_ N.C. App. \_\_, \_\_ 698 S.E.2d 404, 419 (2010) (quoting Sale v. Highway Comm'n, 242 N.C. 612, 617, 89 S.E.2d 290, 295 (1955)). The North Carolina Supreme Court articulated the right in Corum v. University of North Carolina, 330 N.C. 761, 413 S.E.2d 276 (1992), noting that because the common law provides a remedy for every wrong, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under [the North Carolina] Constitution." Id. at 782, 785-86, 413 S.E.2d at 289, 291-92 (holding that sovereign immunity could not bar a state constitutional claim for violation of free speech rights where no other adequate remedy at law existed); see Petroleum Traders Corp. v. State, 190 N.C. App. 542, 547-48, 660 S.E.2d 662, 665 (2008) (agreeing with statement that "Corum articulated a waiver of sovereign immunity specifically for claims under the Declaration of Rights" (i.e., Article I of the North Carolina Constitution)). Thus, "[t]o assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." Copper v. Denlinger, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010) (citing Corum and rejecting direct constitutional claim because a state law remedy existed). An adequate remedy is one that "provide[s] the possibility of relief under the circumstances." Craig, 363 N.C. at 340, 678 S.E.2d at 355. It may be one existing at common

8

law or one created by statute. See Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) (citing Alt v. Parker, 112 N.C. App. 307, 435 S.E.2d 773 (1993)). Notably, the North Carolina Supreme Court cautions that in making its assessment, a court "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." Corum, 330 N.C. at 784, 413 S.E.2d at 291.

Apart from Corum, the only North Carolina Supreme Court opinion to address the scope of a constitutional remedy in any significant detail is Craig. There, the plaintiff sued the county board of education and school principal in her individual and official capacities for negligence and three violations of the North Carolina Constitution (including Article 1, § 19) for their failure to adequately protect him from a sexual assault. Craig, 363 N.C. at 336 & n.4, 678 S.E.2d at 352 & n.4. The defendants moved for summary judgment and asserted governmental immunity. The trial court granted the motion, and the court of appeals affirmed. The North Carolina Supreme Court reversed, observing that because sovereign immunity would deny plaintiff "the opportunity to enter the courthouse doors and present his claim," he would be precluded from pursuing his "direct colorable constitutional claims" and be "left with no remedy for his alleged constitutional injuries." Id. at 340, 678 S.E.2d at

356. The Court held, therefore, that a plaintiff's common law negligence claim is not an "adequate remedy at state law" when "it is entirely precluded by the application of sovereign immunity." Id. at 342, 678 S.E.2d at 356-57.

Defendants do not dispute Edwards' contention that any negligence claim against Barlowe in his official capacity would be barred by immunity.[4] See Thompson v. Town of Dallas, 142 N.C. App. 651, 654-55, 543 S.E.2d 901, 904 (2001) (finding that governmental immunity, which extends to an officer sued in his official capacity, bars a negligence claim absent consent to suit or a waiver through the purchase of liability insurance). Nor do Defendants contest that any negligence claim brought by Edwards against Barlowe in his individual capacity may be barred under the public officers' immunity doctrine. (Doc. 9 at 11-12; Doc. 11.) See Prior v. Pruett, 143 N.C. App. 612, 623, 550 S.E.2d 166, 173 (2001) (stating that a public official, including a police officer, is "[generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions

---

[4] Edwards' amended complaint alleges that the City purchased insurance that excludes coverage for claims subject to governmental immunity. (Doc. 13-1 ¶ 3.) Defendants also contemplate for purposes of this motion that governmental immunity would bar any negligence claim. (Doc. 7 at 7 n.1.) While the court confines itself to the amended complaint, it notes that Defendants' assertion of immunity comports with their answer. (Doc. 18 ¶ 3 (admitting insurance policy and that immunity has not been waived), Second Defense (qualified immunity), Third Defense (governmental immunity), and Fourth Defense (public officer immunity).)

10

were corrupt or malicious or if he acted outside and beyond the scope of his duties" (alteration in original)); Thompson, 142 N.C. App. at 655, 543 S.E.2d at 904-05 (same). Moreover, the City does not challenge Edwards' assertion that he could not pursue it and Barlowe in his official capacity for the intentional torts alleged in his first two causes of action because such claims would be barred by governmental immunity in light of the City's insurance policy provisions. (Doc. 9 at 5-6 (citing admission in Doc. 8, Answer at 1-2 ¶ 3; see Doc. 18, answer to amended complaint at 2 ¶ 3(same)).) Thus, the court assumes (without deciding) for purposes of Defendants' motion that Edwards' potential claims against the City and Barlowe in his official capacity would be barred by some form of immunity.[5] The question, then, is whether Edwards' intentional tort claims against Barlowe in his individual capacity fail to provide an adequate remedy at law so as to render his state constitutional claim cognizable.

---

[5] The court proceeds with this assumption without deciding whether Edwards was incapable of alleging a claim against Barlowe in his individual capacity outside an immunity bar. Edwards' amended complaint alleges that Barlowe's actions in his individual capacity were "intentional, deliberate, malicious, willful and wanton, and exhibited a reckless disregard for Plaintiff's rights and safety." (Doc. 13-1 at 2 ¶ 4.) This is evidence that Edwards believes the alleged conduct may rise to a level under Thompson that survives the immunity bar as to a claim against Barlowe in his individual capacity. See Thompson, 142 N.C. App. at 655, 543 S.E.2d at 904-05 (requiring malice, corruption, or conduct outside the scope of official authority).

Edwards contends that his intentional tort claims may fail as a factual matter if he is unable to prove that his arrest was unlawful or that Barlowe's use of force was malicious or willful. Because each of his state law claims turns on "distinct fact finding about distinct legal questions" and "are not different sides of the same proverbial coin, like the free speech and wrongful discharge claims" noted in Philips, he contends, he lacks a remedy comparable to his negligence claim. (Doc. 9 at 19-20.) Edwards urges the court, therefore, to compare his state constitutional claim to his barred negligence claim rather than to his intentional tort claims. The court should do so, he contends, because in Craig the Court stated that "an adequate remedy must provide the possibility of relief *under the circumstances*," and the plaintiff may bring his state constitutional claims "based on the same facts that formed the basis of his common law negligence claim." (Doc. 9 at 14, 17 (quoting Craig, 363 N.C. at 340, 678 S.E.2d at 355).) Thus, according to Edwards, Corum and its progeny prevent the Defendants from *limiting* his negligence-based remedy. (Id. at 12.) However, North Carolina courts have declined to be persuaded by these arguments.

A plaintiff does not lack an adequate remedy merely because his burden of proof on his available claim may be different. In Rousselo v. Starling, 128 N.C. App. 439, 448-49, 495 S.E.2d 725,

12

731-32 (1998), for example, the plaintiff argued that a false imprisonment common law remedy was inadequate because in order to recover against the officer in his individual capacity he would have to show that the officer acted with malice, corruption, or beyond the scope of his duty. The court noted that it had previously held that "an attempt to vindicate [a plaintiff's] right to be free from restraint . . . is the same interest protected by his common law claim for false imprisonment." Id. at 447, 495 S.E.2d at 730-31 (noting claim of false imprisonment would compensate plaintiff for the "same injury" claimed in his direct constitutional action). The court concluded that "merely because the existing common law claim might require more of him" than the constitutional claim did not render the former inadequate. Id. at 448-49, 495 S.E.2d at 731-32.

Nor have North Carolina courts found that an available claim fails to provide an adequate remedy because a plaintiff may not be able to meet his factual proof. To the contrary, the courts have emphasized that "[a]n adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the *same injury* alleged in

13

the direct constitutional claim."[6]  Estate of Fennell ex rel. Fennell v. Stephenson, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915-16 (2000) (finding that a common law claim of false imprisonment provides an adequate remedy for unlawful restraint and that a common law claim for trespass to chattel provides an adequate remedy for unlawful search), rev'd in part on other grounds, 354 N.C. 327, 554 S.E.2d 629 (2001); see Davis v. Town of Southern Pines, 116 N.C. App. 663, 675-76, 449 S.E.2d 240, 248 (1994) (finding that plaintiff's false imprisonment claim, if successful, would compensate for the injury plaintiff claimed in her direct state constitutional claim for unlawful restraint); Googerdy v. N.C. Agric. & Technical State Univ., 386 F. Supp. 2d 618, 629 (M.D.N.C. 2005) (same, and cataloging several North Carolina cases for this proposition); Olvera v. Edmundson, 151 F. Supp. 2d 700, 705 (W.D.N.C. 2001) (concluding that "[b]ecause a wrongful death claim could compensate Plaintiff for the same injuries (death) as the state constitutional law claim, the latter must be dismissed" under Rule 12(b)(6)).  As the Court in Craig noted, Corum never guaranteed a recovery; rather, it guarantees an opportunity to seek redress for the constitutional wrong.  Craig, 363 N.C. at 340, 678 S.E.2d at 355-56.  Indeed, in finding the existence of

---

[6] "Injury" is defined both as the "violation of another's legal right, for which the law provides a remedy; a wrong or injustice" as well as "[a]ny harm or damage."  Black's Law Dictionary 856 (9th ed. 2009).

14

a constitutional remedy, the Court specifically distinguished situations where a plaintiff could not establish his common law remedy because of the expiration of a statute of limitations. Id.; Wilkins v. Good, No. Civ. 4:98CV233, 1999 WL 33320960, at *8 (W.D.N.C. Jul. 29, 1999) (dismissing alternative constitutional claim where plaintiffs failed to comply with the statute of limitations for their state law claim).[7]

Edwards' argument that a remedy is adequate only if it is successful misconstrues what the North Carolina courts have held and the meaning of "remedy." A "remedy" is "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." Black's Law Dictionary 1407 (9th ed. 2009). A "remedy" is not synonymous with an actual recovery. Rather, it is the "possibility of relief under the circumstances." Craig, 363 N.C. at 340, 678 S.E.2d at 355. Consistent with this

---

[7] Nor does it matter that Edwards' intentional tort claims provide a remedy against Barlowe only in his individual capacity. A remedy is not inadequate only because it fails to provide a remedy against the state. See Rousselo, 128 N.C. App. at 448, 495 S.E.2d at 731 (noting that "Corum did not hold that there had to be a remedy against the State of North Carolina in order to foreclose a direct constitutional claim"); Phillips v. Gray, 163 N.C. App. 52, 57-58, 592 S.E.2d 229, 232-33 (2004) (affirming summary judgment against the plaintiff's claim of wrongful discharge in violation of free speech under the North Carolina Constitution because the plaintiff's rights were adequately protected by a common law wrongful discharge in violation of public policy claim brought against a sheriff in his individual capacity); Johnson v. Causey, No. COA09-1712, 701 S.E.2d 404, 2010 WL 4288511, at *10 (N.C. App. Nov. 10, 2010) (unpublished table opinion) (adequate remedy existed when Sheriff entitled to judgment as matter of law on negligence and other claims and where misconduct claims against former Deputy Sheriff in his individual capacity remained pending).

15

definition, the North Carolina courts have held that a remedy is adequate if the constitutional right sought to be vindicated is protected by an available state law *claim*.  See, e.g., Davis, 116 N.C. App. at 675-76, 449 S.E.2d at 248 (finding that "[p]laintiff's constitutional right not to be unlawfully imprisoned and deprived of her liberty are adequately protected by her common law *claim* of false imprisonment" because that claim has the potential, if successful, to compensate her for the injury she claims in her direct constitutional claim (emphasis added)).[8]

Edwards also simply reads too much into Craig.  In Craig, the Court only held that the plaintiff could not be prevented from pursuing a colorable constitutional claim because sovereign immunity barred him from entering the courthouse doors altogether.  See Gaddy v. Yelton, No. 1:10CV214, 2011 WL 3608023, at *8 (W.D.N.C. Aug. 16, 2011) (finding that where governmental immunity did not bar plaintiff from "enter[ing] the

---

[8] Edwards cites to an October 5, 2010, order in Ruiz v. City of Concord, No. 10-CVS-1586 (Cabarrus Cnty., N.C. Super. Ct. Oct. 5, 2010), in which a North Carolina trial court denied a motion to dismiss a claim against the City and the individual defendant officer in his official capacity under Article I, § 19, of the North Carolina Constitution. (Doc. 9-1.) The one and one-half page order states only that "Plaintiff's claim against [the individual defendant] individually for assault does not represent an adequate remedy at law. If Plaintiff cannot prove [the officer] acted intentionally in injuring her, she would still have a claim for Negligence – that the level of force used in arresting her was unreasonable or excessive – absent the assertion of sovereign or governmental immunity." (Id. at 2.) This order is devoid of any citation to authority and, as a trial court order, lacks any precedential effect.

courthouse doors" because his state law claims of false arrest and assault and battery, among others, against the officer in his individual capacity remained viable, an adequate remedy at state law existed); cf. McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 1010 (M.D.N.C. 2011) (denying motion to dismiss direct constitutional claim because viability of immunity defense remained unresolved). To expand the definition of "remedy" as Edwards urges, therefore, would enlarge the constitutional remedy beyond that authorized by the North Carolina courts.

Here, Edwards has alleged two intentional tort claims for false arrest and assault and battery, which the court finds serve to protect the same constitutional rights to be free from improper restraint and excessive force he seeks to vindicate with his alternative direct constitutional claim. Thus, these claims provide him "the possibility of relief under the circumstances" to vindicate his asserted constitutional injury. Craig, 363 N.C. at 340, 495 S.E.2d at 355. Edwards' direct constitutional claim (third cause of action), therefore, will be dismissed.

### III. CONCLUSION

For the reasons stated above,

IT IS THEREFORE ORDERED that the motion of Defendants the City and Barlowe to dismiss the third cause of action of the amended complaint (seeking a direct claim under the North

17

Carolina Constitution) pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs. 6 & 17) is GRANTED.

                                          <u>/s/   Thomas D. Schroeder</u>
                                          United States District Judge
December 7, 2011